KING–FISHER COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–873C.

United States Court of Federal Claims.

Nov. 20, 2003.

Richard P. Reichstein, Chicago, IL, for plaintiff.

Joseph Trautwein, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General, and Director David M. Cohen, for defendant. Allan Caramella, Department of the Navy, of counsel.

## ORDER DENYING PLAINTIFF'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER AND TO SHOW CAUSE WHY AN ATTORNEY WHO IS A POTENTIAL WITNESS AT TRIAL SHOULD NOT BE DISQUALIFIED

FIRESTONE, Judge.

Presently pending before the court is plaintiff's October 28, 2003 motion to quash the deposition subpoena served on Mr. Richard P. Reichstein, Esquire and for a protective order precluding the taking of his deposition. In considering this request, the court finds that it must also resolve whether Mr. Reichstein can continue to represent the plaintiff in this case. For the following reasons, the court hereby **DENIES** plaintiff's motion to quash and for a protective order and **ORDERS** Mr. Reichstein to show cause why he should not be disqualified as counsel in this case.

**Factual Background**

This case has a long and difficult history. Plaintiff filed this action in 1999 seeking $509,405 plus attorneys fees on a breach of contract action against the United States Navy ("defendant" or "government"). On December 5, 2001, the court granted partial summary judgment to the government with respect to a portion of plaintiff's claim. *King*

*Fisher Co. v. United States,* 51 Fed.Cl. 94 (2001). Following discovery on plaintiff's remaining claims, including plaintiff's claim for $69,120 for "loss of direct labor," the defendant filed a counterclaim on July 21, 2002 seeking to dismiss plaintiff's action and for damages based on various counts of fraud.

On February 14, 2002, the government sought summary judgment on its fraud counterclaim. On August 21, 2003, this court granted the government's motion in part and denied the motion in part. Thereafter, the court held a status conference with the parties to set a final discovery schedule and trial date for resolution of the government's fraud counterclaim.

As part of its discovery on its fraud counterclaim, the government issued a subpoena to depose Mr. Reichstein, plaintiff's attorney. The government sought to depose Mr. Reichstein after Mr. Reichstein admitted in open court that he was the individual responsible for calculating the $120 per hour figure the plaintiff used to in computing its $69,120 claim for "loss of direct labor." The government contends that plaintiff's claim for "loss of direct labor" was based on fraud. Mr. Reichstein's role in calculating the $120 per hour loss of direct labor claim was described at oral argument as follows:

Court: Are you the material witness in this case? .... [Y]ou're telling me you're the one who has actually all the information that went into this [claim for $120 per hour]?

\* \* \* \* \*ʻ

Mr. Reichstein: Your Honor, I have a tremendous amount of information, and I probably have more than any other individual in this case. If it became necessary, I would withdraw as attorney....

Court: You do appreciate that if we have to have a trial in this case on the $120 per hour and the reasonableness of that you're the witness then? You're telling me you're the person who put that together.

Mr. Reichstein: Judge, I'm prepared to testify.

Aug. 11, 2003 Oral Argument Tr. at 34, 38.

Based on these representations, the government, on October 15, 2003, issued a subpoena to depose Mr. Reichstein. In response, Mr. Reichstein, on behalf of his client, filed a motion to quash the subpoena and for a protective order. In his motion, Mr. Reichstein asserts that the deposition should be barred on attorney-client privilege grounds.

## Motion to Quash and For a Protective Order

■ Notwithstanding plaintiff's claim of attorney-client privilege, a blanket assertion of attorney-client privilege does not automatically bar the deposition of an opposing party's counsel, who participated in the events that underlie the action. *Alcon Labs., Inc. v. Pharmacia Corp.,* 225 F.Supp.2d 340 (S.D.N.Y.2002); *Sadowski v. Gudmundsson,* 206 F.R.D. 25 (D.D.C.2002); *Johnston Dev. Group, Inc. v. Carpenters Local Union,* 130 F.R.D. 348 (D.N.J.1990). In *Sparton Corp. v. United States,* 44 Fed.Cl. 557 (1999), the court looked to the Eighth Circuit decision in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986), to determine whether to allow the deposition of an opposing counsel. In *Shelton,* the Eighth Circuit had held that deposing opposing counsel "should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d at 1327 (citation omitted).

■ This court also finds that *Shelton* provides useful standards to apply in considering the question of deposing an opposing party's counsel. In contrast to *Sparton,* however, this court concludes that the opposing counsel may be deposed. In particular, where, as here, the opposing counsel was the individual directly responsible for calculating the $120 per hour claim at issue in the case and concedes that he alone "has a tremendous amount of information," the government is entitled to depose Mr. Reichstein regarding the "facts" surrounding his calculation. Mr.

Reichstein's admissions in this regard speak for themselves.

Mr. Reichstein's contention that his deposition should be barred because the government is improperly seeking attorney-client privileged information is not supported. Mr. Reichstein has not provided the court with any basis to conclude that the facts he relied upon to calculate the $120 per hour figure are privileged. To the contrary, he stated in open court that he examined the plaintiff's "financials" in calculating the $120 per hour figure. There is nothing to suggest that the government is seeking to obtain the substance of any "privileged" communications between Mr. Reichstein and his client.

In this connection, the government's reliance on cases which identify circumstances warranting the waiver of attorney-client privilege is premature. The government has identified several cases where the attorney-client privilege was impliedly waived when a party asserted a claim or defense that in fairness required examination of protected communications. *See United States v. Bilzerian*, 926 F.2d 1285 (2d Cir.1991), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991); *In re von Bulow*, 828 F.2d 94 (2d Cir.1987). Several of these cases involve situations where the client places his state of mind or knowledge in issue. In such cases, the courts have held that the attorney-client privilege with respect to attorney-client communications that have bearing on that state of mind or knowledge is impliedly waived. *Federal Deposit Ins. Corp. v. Wise*, 139 F.R.D. 168 (D.Colo.1991).

Here, however, the government has not suggested that it seeks to ask Mr. Reichstein about his client's state of mind.[1] Rather, the government has represented in its October 31, 2003 Opposition to Plaintiff's Motion to Quash Subpoena and For a Protective Order that it wants to learn at the deposition of Mr. Reichstein which documents he examined to calculate the $120 per hour figure and how he then used those documents to arrive at the $120 per hour direct labor claim. There is nothing improper with its request. The government will be permitted to conduct

such a deposition and to obtain all documents relevant to the issue of the $120 per hour calculation. This court will deal with issues of privilege when they become ripe for consideration.

**Disqualification**

■ Before allowing the deposition to go forward, however, the court must first address the question of plaintiff's representation. In particular, the court must determine whether Mr. Reichstein's continued representation of plaintiff would amount to "misconduct" under this court's rules of practice. Inherent in the court's power to regulate the professional conduct of the attorneys admitted to practice before the court, is the power and duty to disqualify attorneys from participating in a particular case, if there is a conflict of interest or ethical impropriety. *See* Rule 83.2 of the Rules of the United States Court of Federal Claims ("RCFC").

RCFC Rule 83.2(c)(2) provides that the Court of Federal Claims has adopted the American Bar Association Model Rules of Professional Conduct ("ABA Model Rules") as the Code of Professional Responsibility for the Court. Rule 3.7 of the ABA Model Rules, in turn, provides that a lawyer may not ordinarily serve as a witness in a case and remain counsel. More specifically, Rule 3.7 states:

> (a) A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where:
>> (1) the testimony relates to an uncontested issue;
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>> (3) disqualification of the lawyer would work substantial hardship on the client.
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9

ABA Model Rules, Rule 3.7 (2001).

In light of Rule 3.7, it would appear that Mr. Reichstein's continued representation of

---

1. This is not to say that it may be appropriate for the government to engage in such an inquiry.

To date, however, the government has not indicated that it intends to make such an inquiry.

plaintiff presents a potential violation of Rule 3.7 and would therefore constitute "misconduct" under RCFC Rule 83.2(c)(2). In such circumstances, the court has no choice but to give Mr. Reichstein the opportunity to show cause why he should not be disqualified from this case.

## Conclusion

Based on the foregoing, plaintiff's motion to quash and for a protective order is **DENIED**. Mr. Reichstein shall have until **Friday, December 5, 2003** to file with the Clerk of the Court a response to the court's show cause order. The government's deposition of Mr. Reichstein shall not proceed until resolution of the show cause order.

**IT IS SO ORDERED.**