**ROYAL BAHAMIAN ASSOCIATION, INC., Plaintiff,**

v.

**QBE INSURANCE CORPORATION, Defendant.**

No. 10–21511–CIV–MORENO/GOODMAN.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 30, 2010.

Christopher N. Mammel, Katherine Smith Dedrick, Matthew P. Fortin, Michael W. Duffy, Childress Duffy Goldblatt, Ltd., Chicago, IL, Jeffrey N. Golant, Pompano Beach, FL, for Plaintiff.

Maria Josefa Beguiristain, Raoul G. Cantero, III, White & Case LLP, Miami, FL, Melissa M. Sims, Patrick Edward Betar, Berk, Merchant & Sims, PLC, Coral Gables, FL, for Defendant.

## ORDER GRANTING MOTION FOR PROTECTIVE ORDER

JONATHAN GOODMAN, United States Magistrate Judge.

THIS MATTER is before the Court on the Motion of Defendant, QBE Insurance Corporation ("QBE"), for Protective Order and Incorporated Memorandum of Law. (DE# 38, 7/26/2010.) Plaintiff, Royal Bahamian Association, Inc. ("Royal Bahamian"), responded on August 9, 2010, and QBE replied on August 16, 2010. (DE# 47, 57.) Having reviewed the applicable filings and the law, and for the reasons stated below, this Court grants Defendants' motion.

### I. Procedural Background

This case involves the claims of an insured, Royal Bahamian, against its property insurer, QBE, relating to claimed damage of its insured property allegedly caused by Hurricane Wilma in 2005. The motion now before the Court relates to documents requested by Royal Bahamian in a July 15, 2010, subpoena to FIU and a July 16, 2010, notice of taking deposition *duces tecum* to Mendy Little. QBE has objected to many of these document requests,[1] primarily on the ground that

1. Specifically, all requests in the subpoena and request numbers 8 through 10 in the notice.

none of the requested documents are relevant in a first-party insurance coverage dispute. Royal Bahamian, of course, contends that these documents are relevant either directly to its claim and/or to QBE's defenses and/or for impeachment purposes.

### II. Standard for Granting of a Protective Order

Federal Rule of Civil Procedure 26(b)(1) provides that "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Court must construe this rule liberally to allow for the fullest discovery appropriate. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1546–47 (11th Cir.1985); *Williams v. City of Dothan,* 745 F.2d 1406, 1415 (11th Cir.1984).

Federal Rule of Evidence 401 defines "relevant evidence" as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See also Dunford v. Rolly Marine Service Co.,* 233 F.R.D. 635, 637 (S.D.Fla.2005). "A Court must balance the competing factors involved in determining whether good cause has been shown." *New World Network Ltd. v. M/V Norwegian Sea,* No. 05–22916–CIV, 2007 WL 1068124, at *1 (S.D.Fla. April 6, 2007) (citing *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985)).

### III. Analysis

#### a. Personnel Files (Subpoena 1, Notice 8)

■ Royal Bahamian seeks a copy of the personnel files of "all individuals involved in or having responsibility for the plaintiff Royal Bahamian's insurance claim related to Hurricane Wilma," as well as Mendy Little's

(DE# 38, p. 10.)

personnel file. Royal Bahamian claims this information is relevant to demonstrate the bias of these employees with regard to the handling of its claim.

The Court disagrees.

This request is overbroad and irrelevant to the primary issues in this case—coverage and the amount, if any, owed by QBE under its insurance contract with Royal Bahamian. *See Ayala v. American Sec. Ins. Co.*, No. 09–80053–CIV, 2009 WL 1873645, at *1 (S.D.Fla. June 30, 2009).

Such alleged bias is irrelevant here, in a first party insurance claim for breach of the insurance contract. Moreover, this request is doubly improper as it seeks to invade the legitimate privacy rights of the employees, and Royal Bahamian has not shown that any information in any particular employee's personnel file is directly relevant for any other reason, such as impeachment. *See Tolz v. Geico Gen. Ins. Co.*, No. 08–80663–CIV, 2010 WL 298397, at *3 (S.D.Fla. Jan.19, 2010) (production of personnel file improper in bad-faith action where no evidence it is necessary for a specific purpose, such as to impeach sworn testimony). QBE's motion is granted as to subpoena request 1 and notice request 8.

### b. Compensation Packages of Individuals Who Handled Royal Bahamian's Claim (Subpoena 2–3, Notice 9–10)

■ Royal Bahamian essentially seeks all documents describing the way in which any person involved in the handling of its claim is paid. Royal Bahamian believes the existence of any financial incentives to deny its claim are relevant. A similar request was considered and rejected previously in this district in *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, No. 07–22988, 2008 WL 2645680, at 3–5 (S.D.Fla. June 26, 2008). In general, such evidence is only relevant to a bad faith case, not a first party coverage case. *Id.* at 3.

There is an obvious and open relationship between QBE and FIU. Moreover, it will not be lost on a jury that these companies' employees have an incentive to promote their interests. This also is not an instance where a particular, tangible connection has been demonstrated between any document in these files and impeachment of a particular employee at trial. *Id.* (citing *Jeld–Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05–60860–CIV, 2007 WL 1526649 (S.D.Fla. May 22, 2007)). QBE's motion is granted as to subpoena requests 2–3 and notice requests 9–10.

### c. FIU Client Lists (Subpoena 4)

■ Royal Bahamian seeks "a list of all clients for whom FIU performs insurance related services." QBE objects that at most this information could be relevant only in a bad faith action. Royal Bahamian does not directly address QBE's objection in its response and instead relies upon a conclusory allegation that this information is relevant to its breach of contract claim and QBE's affirmative defenses. The Court agrees with QBE because there does not appear to be any reason why this confidential business information is relevant to any issue in Royal Bahamian's lawsuit here. *Cf. Kennedy v. Provident Life*, No. 07–81218–CIV, 2009 WL 3048683, at * 2 (S.D.Fla. Sept.18, 2009) (denying discovery into claims practices where sole issue is whether plaintiff can prove it is entitled to coverage under an insurance policy). QBE's motion is granted as to subpoena request 4.

### d. Underwriting Practices and Servicing and Administration Practices (Subpoena 5 and 6)

■ Royal Bahamian seeks QBE's "underwriting practices, procedures and guidelines" in effect in Florida from 2004 to 2006, as well as QBE's "servicing and administration practices, procedures and guidelines" from the same time period. Royal Bahamian argues that this information is relevant because it will reveal the context within which QBE documents were generated, as well as demonstrate the significance of any absence of information in the underwriting file. In *Milinazzo*, 247 F.R.D. at 703, the Court held that "[p]rior to the determination of coverage, standard operating procedures are irrelevant" because an insurance company's failure to follow its own internal guidelines is

irrelevant to whether the company breached the contract.

This Court agrees with QBE (and the *Milinazzo* Court) that none of these documents are relevant to Royal Bahamian's claim.[2] *See also Kennedy*, 2009 WL 3048683 at * 1 ("documents ... regarding the insurer's claims handling or general business practices are irrelevant to the issue of whether the insured is entitled to the coverage claimed and may only be relevant to a claim of bad faith") (citing *State Farm Fire & Cas. Co. v. Valido*, 662 So.2d 1012, 1013 (Fla. 3d DCA 1995)). QBE's motion is therefore granted as to request numbers 5 and 6.

### e. Reinsurance Policy Documents (Subpoena 7)

 In its final subpoena request, Royal Bahamian seeks any documents relating to reinsurance QBE obtained for Royal Bahamian's policy from December 15, 2004, through December 15, 2005. Royal Bahamian alleges this information is relevant because it may contain QBE's assessment of its coverage obligations and whether it has previously valued Royal Bahamian's claim differently. However, this Court does not believe that this information is relevant to the factual matter of whether Royal Bahamian is entitled to coverage. Cf. *Kennedy*, 2009 WL 3048683 at * 1. *See also Altenbaumer v. Lion Oil Co.*, 186 F.2d 35, 36 (5th Cir.1950) (existence of insurance that also covers claimed loss irrelevant to liability).

### IV. Conclusion

For the reasons stated above, QBE's motion for protective order is granted in full. FIU shall not produce any of the documents requested in Royal Bahamian's July 15, 2010, subpoena and QBE/Mendy Little shall not produce any documents responsive to request numbers 8 through 10 of Royal Bahamian's July 16, deposition notice.

DONE AND ORDERED.

---

2. In its response, Royal Bahamian suggests it is seeking not only documents describing QBE's underwriting practices and procedures, but also the underwriting file itself. While Royal Bahamian's request itself does not actually include the underwriting file itself, it is not entitled to this file because Royal Bahamian has not raised any underwriting issue, such as that the insurance contract is ambiguous. *Milinazzo*, 247 F.R.D. at

702. Moreover, this decision does not conflict with *1550 Brickell Assocs. v. QBE Ins. Corp.*, No. 07–22283–CIV, 2008 WL 4279538, at * 2 (S.D.Fla. July 2008). In *1550 Brickell*, the court ordered production only of "all non-duplicative documents" in the underwriting file. According to Royal Bahamian, QBE has already provided all underwriting documents showing the pre-loss condition of the property. (DE# 47, p. 5.)